MICHAEL MELTZER, as Administrator, etc., of ROSA MELTZER, Deceased, Respondent, *v.* WILLIAM M. BARRETT, as President of the ADAMS EXPRESS COMPANY, Appellant.

Second Department, October 28, 1920.

**Motor vehicles — negligence — action to recover for death of child killed by motor truck — finding of violation of ordinance based upon testimony of child — verdict for plaintiff against weight of evidence.**

Action to recover for the death of the plaintiff's daughter, a child ten years of age, who was struck and killed by the defendant's motor truck. It appeared that the truck had just turned a corner and while going at a slow rate of speed struck the decedent who was chasing a ball which had bounded into the street. It was admitted that when the truck was brought to a standstill immediately after the accident, it was upon the wrong side of the street, and a judgment for the plaintiff is based upon the finding from the testimony of a companion of the deceased, a girl of about the same age, that the driver of the truck having turned the corner did not keep to the right side of the street as required by the city ordinance.

*Held*, that a judgment for the plaintiff was against the weight of evidence, as the truck was stopped on the wrong side of the street owing to the fact that the driver was compelled suddenly to change his course in an effort to avoid striking the decedent.

APPEAL by the defendant, William M. Barrett, as President of the Adams Express Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office

of the clerk of the county of Kings on the 26th day of November, 1919, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the same day, denying the defendant's motion for a new trial made upon the minutes.

*George W. Smyth* [*Louis E. Johnson* and *Edward V. Conwell* with him on the brief], for the appellant.

*Louis Freudenberg,* for the respondent.

JENKS, P. J.:

I think that the evidence does not justify the verdict and that a new trial should be granted.

In the borough of Brooklyn the plaintiff's daughter, aged 10 years and 8 months, was at play with a ball on the sidewalk of Sutter avenue near its corner with Christopher street. The ball bounded into the roadway and the child darted after it. The defendant's motor truck, which had just turned from Sutter avenue into Christopher street, came into collision with the child, who was fatally injured.

The learned trial justice accurately stated and correctly submitted the sole question of negligence. And unless the proof justified the finding that the course taken by the motor truck in turning the corner was in violation of the ordinance, the verdict cannot be sustained. (See Code of Ordinances of City of New York, chap. 24, art. 2, § 11, subds. 1, 6; Cosby's Code of Ordinances [Anno. 1920], p. 513.)

The evidence that makes for the plaintiff is the testimony of a single witness called by the plaintiff and the undisputed proof that when the car was stopped almost immediately after the casualty the car was on the wrong side of Christopher street. But this physical circumstance is consistent with the testimony adduced by the defendant that the driver, when he saw the peril, sharply drove his car from right to left. My dissatisfaction is not from count of the witnesses, although the plaintiff called but one and the defendant four. The witness for the plaintiff was a girl companion of the intestate. She lived in the locality and had been in association with the intestate just before the casualty. At that time the witness was under 10 years of age; at the time of the trial she was 11 years old. She had left the intestate to go into a shop and saw the casualty

as she turned upon the steps of that shop. Upon her testimony alone rests the proposition that the motor truck was turned around the corner on the left, instead of on the right side as required by the ordinance. I do not presume to charge willful lying to the child, nor is such charge necessary to my determination. Here is a child of tender years who a year or more after a fatality of a few seconds duration undertakes to testify to the previous continuous course of the motor truck. The attention of any witness who foresaw a possible imminent casualty would naturally be held by the juxtaposition of the car and the child. We must remember that the car had not approached in a straight course, but had just turned from another street. It was not natural that any such witness could tell whether the car when it came into contact with the child on the left side of the street was in its original course around the corner or had been turned swiftly from that course to avoid the child. When we remember that the truck was concededly on the wrong side of the street at the time of contact with the intestate, and that it was stopped upon that side, is it not likely that the child concluded that such had been its course from the outset of the turn? It is not strange that the testimony of the witness as to the details of her observation and of the circumstance did not make it plain that she actually saw the truck make an improper turn of that corner. Her testimony indicates that she was prone to state inferences as facts. Thus she testifies that she saw the truck coming but the intestate did not, that she called out a warning to the intestate but the latter did not hear, that the intestate looked all around but the intestate did not see any one coming. Such testimony was not even hearsay. When asked on cross-examination whether the driver of the truck swung to the left to the other side of the street to try to get away from the intestate, she first answered, " Yes; not near my store; near the grocery store." And when the very next question repeated the inquiry she answered, " No." In six different parts of her testimony, when asked how the casualty happened, she answered, (1) " she looked *all around before* she ran for the ball but *she didn't see anyone coming.*" (2) " I didn't see in what direction the ball fell and then she *looked all around. She didn't see any truck coming,*" etc. (3) " First

she bounced the ball and *she looked all around; she didn't see any truck coming,"* etc. (4) " Then I didn't see where the ball fell and *she looked all around to see if anything was coming,* and then she ran for the ball and then *she looked all around* for the ball and then *she saw nothing was coming."* (5) " Q. You didn't see her running out into the street and this automobile coming towards her, did you? A. No, *she looked all around."* (6) " Q. Did you see her run out in the street after that ball? A. Yes. *First she looked all around* and then she ran into the street."  I think I am not hypercritical when I say that this constant repetition of an element of care on the part of the intestate was not a spontaneous utterance of a child.  I make not the slightest reflection upon the most reputable attorneys for the plaintiff.  Their standing at the bar negatives any idea of a schooling of this witness, and the same is true of counsel.  But the child admitted several conversations with others who were more or less interested in the case, and I feel bound to state a circumstance that may indicate the plastic character of this child's mind.  (See Moore on Facts, § 899.)

For the defendant the driver of the motor truck testifies that he made the turn required by the ordinance, traveling at the rate of $4\frac{1}{2}$ miles an hour; that as he came into the street he saw the intestate running out into the roadway; that he turned sharp to the left to avoid her, and stopped the car almost immediately but too late to prevent the intestate from collision with the battery box of his vehicle.  The helper on the truck was in the rear of the car and did not see the casualty.  He testifies that the truck then traveling at 4 or $4\frac{1}{2}$ miles an hour made the right turn, but after it had passed the center line of the street he felt a sudden jerk; heard the horn, and that the truck was driven over to the other side of the street so suddenly that he was jarred and had to hold on to the rope.  Goldstein, near the scene, who stood in front of his shop, saw the motor truck traveling at an ordinary rate of speed.  He saw it at first make the proper turn and then turn over to the left.  He did not at that time know the reason for this diversion.  He saw the truck stopped and the intestate lifted up from the street under the truck.  Ruege, a policeman, came early to the scene.  He examined the roadway and the

marks of the wheels as pointed out to him, found in them an indication of a proper turn and also pretty clear signs that the tracks had shifted suddenly towards the other side of the street, where he presumed that brakes had been applied. No physical circumstance is suggested of emergency or otherwise that required or justified the making of a wrong turn in the first instance. It seems to me that a finding of negligence is against the weight of the evidence.

The judgment and order are reversed and a new trial is granted, with costs to abide the event.

MILLS, BLACKMAR, KELLY and JAYCOX, JJ., concur.

Judgment and order reversed and new trial granted, with costs to abide the event.